UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

RONALD GUERRERO,

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

-----------------------------------------------------------x

23-cv-7586 (AEK)

**DECISION AND ORDER**

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J**[1]

Currently before the Court is Plaintiff Ronald Guerrero's motion for attorneys' fees pursuant to 42 U.S.C. § 406(b). ECF No. 26. For the reasons set forth below, the motion is GRANTED.

**BACKGROUND**

Plaintiff filed an application for Social Security disability benefits with the Social Security Administration ("SSA") on March 4, 2021, claiming a disability onset date of October 7, 2020. ECF No. 11 ("Administrative Record" or "AR") at 77. After the SSA denied his claim, Plaintiff requested a hearing before an administrative law judge ("ALJ"), *id.* at 117-18, and a hearing was held before ALJ Vincent Cascio on June 21, 2022, *id.* at 39-60. ALJ Cascio issued a decision on July 21, 2022, finding that Plaintiff was not disabled. *Id.* at 17-33. On August 10, 2023, the SSA's Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1-9.

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 10.

On August 25, 2023, Plaintiff signed a retainer agreement with Howard D. Olinsky, Esq., to pursue an appeal in federal court of the SSA's denial of his application for benefits. ECF No. 27 ("Olinsky Aff.") ¶ 3 & Ex. A ("Retainer Agreement"). Pursuant to the Retainer Agreement, Plaintiff agreed to pay Mr. Olinsky's firm up to 25 percent of any past-due benefits he received as a result of a remand to the SSA following a successful federal court appeal and subsequent award by the SSA following additional proceedings. Retainer Agreement at 1.

Plaintiff commenced this action on August 25, 2023. ECF No. 1. The Commissioner filed the Administrative Record on October 25, 2023, ECF No. 11, and Plaintiff filed his brief in support of his position on January 16, 2024, ECF No. 14. On April 11, 2024, before the Commissioner filed any opposition papers, the parties filed a proposed stipulation and order to remand, ECF No. 18, which the Court so ordered on April 12, 2024, ECF No. 19. On April 29, 2024, a judgment was entered, and the case was remanded for further administrative proceedings. ECF No. 20. On July 24, 2024, pursuant a stipulation that the Court so ordered, Plaintiff was awarded attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), in the amount of $4,543.37. ECF No. 25.

Following the remand, on October 22, 2025, the SSA issued an "Important Information" letter, in which it provided "new information about the disability benefits which [Plaintiff] [was] receiv[ing] on this Social Security record." Olinsky Aff. Ex. B ("Important Information Letter" or "IIL") at 1. In the letter, the SSA said it "found that [Plaintiff] became disabled on October 7, 2020"; noted the full monthly benefit amounts Plaintiff would be receiving "before any deductions or rounding"; and stated that Plaintiff would "soon receive a check for $77,156.50 because of an additional lump-sum payment." *Id.* at 1-2. The letter also noted that the SSA

withheld $25,037.50—25 percent of the past-due benefits—to pay fees to Plaintiff's attorney. *Id.* at 2.

Mr. Olinsky filed the instant motion, which seeks $19,037.50 in attorneys' fees, on March 24, 2026. ECF Nos. 26-27. Mr. Olinsky's affirmation in support of the motion appropriately acknowledges that should the motion be granted, and he receives payment, he will refund to Plaintiff $4,543.37—*i.e.*, the amount previously received by counsel under the EAJA. Olinsky Aff. at 3. On April 21, 2026, the Commissioner filed a response to the motion in his limited role "'resembling that of a trustee for the claimant[].'" ECF No. 31 at 1 (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002)). The Commissioner did not take a specific position with respect to the fee request, and noted that "[i]t is for the Court to decide if the request for attorney's fees under 42 U.S.C. § 406(b) is reasonable under the law." *Id.* at 2.

## DISCUSSION

### I. Legal Standard

"Three statutes authorize attorney's fees in social security actions. 42 U.S.C. § 406(a) compensates attorneys for their representation at the administrative level; 42 U.S.C. § 406(b) compensates attorneys for representation before federal courts; and the EAJA provides additional fees if the Commissioner's position was not 'substantially justified.'" *LaFrance v. Saul*, No. 17-cv-4709 (CM) (SN), 2019 WL 4677041, at *1 (S.D.N.Y. Aug. 26, 2019) (citing *Gisbrecht*, 535 U.S. at 794-96), *adopted by* 2019 WL 4565074 (S.D.N.Y. Sept. 20, 2019). Pursuant to § 406(b), which is invoked here, "[w]henever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation," as long as the fee does not exceed "25

percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A).

## II. Analysis

### A. Timeliness

In *Sinkler v. Berryhill*, the Second Circuit concluded that the 14-day filing period for seeking attorneys' fees set forth in Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure applies to attorneys' fee applications under 42 U.S.C. § 406(b); the filing period runs from the date on which the notice of award is received, and the period also may be subject to equitable tolling. 932 F.3d 83, 85 (2d Cir. 2019).[2] Thus, "[w]here, as here, a Social Security claimant secures a judgment reversing a denial of benefits and remanding for further proceedings, the fourteen-day filing period is tolled until the claimant receives notice of the amount of any benefits award . . . because the benefits award amount is necessary to identify the maximum attorney's fee that may be awarded under § 406(b)." *Id.* "[I]t is unclear whether the court in *Sinkler* intended for the 14-day tolling period to commence when the *party* to the action receives notice of the damage award or when the *party's counsel* receives notice." *Almodovar v. Saul*, No. 16-cv-7419 (GBD) (SN), 2019 WL 6207784, at *2 (S.D.N.Y. Nov. 21, 2019) (emphases in original); *compare Sinkler*, 932 F.3d at 85 ("[T]he fourteen-day filing period is tolled until the claimant receives notice of the amount of any benefits award.") *with id.* at 88 ("Once counsel receives notice of the benefits award . . . there is no sound reason not to apply Rule 54(d)(2)(B)'s fourteen-day limitations period . . . .").

---

[2] Rule 54(d)(2)(B) states that "[u]nless a statute or a court order provides otherwise," a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i).

Here, the IIL is dated October 22, 2025, and is presumed to have been received on October 25, 2025. *See Sinkler*, 932 F.3d at 89 n.5 ("Nothing in this opinion departs from the law's presumption that a party receives communications three days after mailing."). Mr. Olinsky states that he received the IIL almost five months later, on March 10, 2026. Olinsky Aff. ¶ 4 (referring to the IIL having been "received via fax on March 10, 2026"). The IIL is addressed to a different attorney for Plaintiff, Eitan Dagan, who represented Plaintiff before the SSA prior to the filing of this federal action. *See* AR at 4, 12. Mr. Dagan apparently also represented Plaintiff in the administrative proceedings on remand, since Mr. Olinsky's firm was retained to represent Plaintiff only in federal court. *See* Olinsky Aff. ¶ 6 ("[Mr. Olinsky] did not represent Plaintiff at the agency level."); Retainer Agreement. While it took several months for the IIL to make its way to Mr. Olinsky, once Mr. Olinsky received it, he filed the motion for attorneys' fees 14 days later, on March 24, 2026. ECF Nos. 26-27. The Commissioner does not contest the timeliness of the motion.

The Court need not—and does not—decide the correct interpretation of *Sinkler* to resolve this matter. In holding that Rule 54(d)(2)(B) applies in the context of § 406(b) motions, the Second Circuit noted that the 14-day limitations period "is not absolute," and that such a period applies "unless a statute or a court order provides otherwise." *Sinkler*, 932 F.3d at 89 (quoting Fed. R. Civ. P. 54(d)(2)(B)). "Thus, district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* The Court finds that the circumstances here warrant doing so. Because Mr. Olinsky's firm did not represent Plaintiff before the SSA on remand, he was not notified by the SSA of the benefits award at the time the IIL was issued. As noted above, once he found out about the award, Mr. Olinsky filed the motion for attorneys' fees within 14 days. Accordingly, even if the filing period began to run when Plaintiff presumably received the IIL on

October 25, 2025, enlargement of the filing period is warranted under the circumstances, and the motion is deemed to be timely. *See Sinkler*, 932 F.3d at 89-90; *see also Velez v. Comm'r of Soc. Sec.*, No. 18-cv-9754 (AEK), 2021 WL 2310517, at *3 (S.D.N.Y. June 7, 2021) (enlarging filing period and deeming § 406(b) motion timely filed where plaintiff's attorney did not receive Notice of Award until it was sent to him by firm that represented plaintiff before the SSA) (citing cases).

**B. Reasonableness of Fee Award**

To ensure that contingency fees are employed fairly in Social Security cases, "Congress capped contingency fees at twenty-five percent of the claimant's past-due benefits and charged courts with ensuring that resulting fees are 'reasonable.'" *Fields v. Kijakazi*, 24 F.4th 845, 849 (2d Cir. 2022). "'[W]here there is a contingency fee agreement in a successful social security case, the district court's determination of a reasonable fee under § 406(b) must begin with the agreement, and the district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable.'" *Id.* at 852-53 (quoting *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990)). "When conducting its analysis, the court's primary inquiry should be on the reasonableness of the contingency agreement in the context of the particular case and not merely to rubber stamp the contingency fee agreement." *Caraballo v. Comm'r of Soc. Sec.,* No. 17-cv-7205 (NSR) (LMS), 2021 WL 4949217, at *2 (S.D.N.Y. Oct. 22, 2021).

To assess the reasonableness of a contingency fee, a court must first "determine whether the contingency percentage is within the 25% cap and . . . whether there has been fraud or overreaching in making the agreement." *Fields*, 24 F.4th at 853 (cleaned up). A court must then consider the following factors to determine the reasonableness of a requested award: (1) whether the requested fee is out of line with the "character of the representation and the results the

representative achieved," (2) whether "the attorney is responsible for delay, lest the attorney profit from the accumulation of benefits during a delay that the attorney caused," and (3) "if the benefits are large in comparison to the amount of time counsel spent on the case, the so-called windfall factor." *Id.* (cleaned up).

Here, the requested fee of $19,037.50 is less than 25 percent of Plaintiff's past-due benefits,[3] and there is no evidence or suggestion of fraud or overreaching in the negotiation of the Retainer Agreement.

The Court turns next to the reasonableness factors. First, the requested fee is in line with the character of the representation and results achieved. Mr. Olinsky filed this action to challenge the denial of benefits, was able to secure the Commissioner's agreement to remand the case to the SSA for further proceedings after filing an opening brief, and after remand, Plaintiff was awarded $100,150.00 in past-due benefits. Olinsky Aff. ¶ 4; *see, e.g.*, *Shrack v. Saul*, No. 16- cv-2064 (RMS), 2020 WL 373074, at *2 (D. Conn. Jan. 23, 2020) (finding that where the plaintiff sought and obtained a remand to the SSA, and "the plaintiff received a fully favorable result upon remand," the fee was in line with character of representation and results achieved).

Second, Mr. Olinsky did not cause any unreasonable delay in this action. Although he requested, and was granted, a 60-day extension of time to file his opening brief, *see* ECF No. 13, he was able to secure a stipulated remand of the matter for further administrative proceedings within three months of filing the brief, ECF Nos. 18-19, and there is no reason to believe that the extension request was submitted for any improper purpose.

[3] The IIL does not state the dollar amount of the total past-due benefits award, but Mr. Olinsky states that "Plaintiff's past due benefits were $100,150.00 for April 2021 through August 2025." Olinsky Aff. ¶ 4. The IIL states that 25 percent of past-due benefits, or $25,037.50, was withheld from the award for payment of the representative's fee, *see* IIL at 2; this is consistent with Mr. Olinsky's representation ($25,037.50 x 4 = $100,150.00).

Third, with respect to the "windfall" factor, counsel's requested fee of $19,037.50 is not inappropriately large in light of the 22.2 hours that Mr. Olinsky's firm devoted to this case (17.5 hours by attorneys and 4.7 hours by paralegals) and the successful result that was achieved. *See* Olinsky Aff. ¶ 9 & Ex. C. For purposes of evaluating the "windfall" factor, the Second Circuit has instructed courts to look beyond the *de facto* hourly rate and to assess: (1) the "ability and expertise" of the attorneys, (2) the "nature and length of the professional relationship" with the claimant, (3) the "satisfaction of the disabled claimant," and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Fields*, 24 F.4th at 854-55.

The 17.5 hours of work done in this matter by attorneys was performed by Mr. Olinsky (3.0 hours), Kaelin Richard, Esq. (1.0 hour), Andrew Flemming, Esq. (13 hours), and Edward Wicklund, Esq. (0.5 hours), *see* Olinsky Aff. Ex. D; five different paralegals contributed to the 4.7 hours of paralegal work done in this case, *see id.* Ex. E. This work included review of the administrative record and drafting Plaintiff's brief, which resulted in a stipulated remand. *See* Olinsky Aff. Exs. C, D, E. Courts within the Second Circuit generally and routinely endorse 20-40 hours for work performed by counsel in Social Security disability cases. *See Bass v. Kijakazi*, No. 16-cv-6721 (JCM),w 2022 WL 1567700, at *4 (S.D.N.Y. May 18, 2022). The hours worked by Mr. Olinsky's firm in this matter fall within this range and reflect counsel's significant

experience in these types of cases.[4] In addition, the Court has no reason to believe that Plaintiff is in any way dissatisfied with the results of the representation. Indeed, counsel's efforts led to the reversal of the Commissioner's original denial of benefits and a significant award of benefits to Plaintiff. Olinsky Aff. ¶¶ 1, 4; IIL at 1-2; *Bass*, 2022 WL 1567700, at *5 (finding that counsel's success in advocating on behalf of plaintiff "militate[s] in favor of approving" fee request). Further, given that Plaintiff did not secure a remand until after his counsel filed an opening brief, it is apparent that a favorable outcome was uncertain. *See Fields*, 24 F.4th at 856 ("A windfall is more likely to be present in a case . . . where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort, suggesting very little risk of non-recovery. That kind of unearned advantage is what the windfall concern really is about."). Moreover, "[l]awyers who operate on contingency—even the very best ones—lose a significant number of their cases and receive no compensation when they do"; accordingly, when operating

[4] The Court notes that Mr. Olinsky's motion papers fail to provide any citation to relevant case law or anything other than a passing, conclusory analysis of the applicable legal standards. Nor does he provide evidence in his affirmation regarding the background and experience of any of the attorneys from his firm who worked on this matter, even though this is a necessary element of the Court's evaluation of the "windfall" factor. Given his years of experience and expertise in the field of Social Security appeals, *see* https://windisability.com/about_posts/howard-d-olinsky-esq/ (Mr. Olinsky, whose specialties include Social Security appeals in federal court, graduated from law school in 1985) (last visited on 10/13/2026) [https://perma.cc/4JMW-JKTX], these are errors that should not be made.

Nonetheless, to avoid further delay, the Court took it upon itself to consult the website for Mr. Olinsky's firm to find information not only about Mr. Olinsky, but also about the other attorneys who worked on this matter. Mr. Flemming, who specializes in Social Security disability appeals, graduated from law school in 2016, *see* https://windisability.com/about_posts/andrew-flemming-esq/ (last visited on 10/13/2026) [https://perma.cc/VDP9-PYTH]; and Mr. Wicklund, who specializes in Social Security appeals in federal court, graduated from law school in 2011, *see* https://windisability.com/about_posts/edward-wicklund-esq/ (last visited on 10/13/2026) [https://perma.cc/22RH-Z5PW]. These attorneys therefore also possess much experience and expertise in handling Social Security appeals. There was no information available on the firm website for Kaelin Richard.

with a contingency agreement like the one at issue here, "payment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk." *Id.* at 855-56 (cleaned up). The award amount sought here appropriately reflects this risk.

Turning to the *de facto* rate—which is not dispositive, *see id.* at 854—counsel would effectively be compensated here at a *de facto* blended hourly rate of approximately $857.55 per hour ($19,037.50 for a total of 22.2 hours worked by both attorneys and paralegals); the *de facto* hourly rate for the attorneys' time only would be approximately $1,087.86.[5] These rates are well within the range of *de facto* hourly rates approved by courts within this Circuit, and are substantially below the $1,556.98 *de facto* hourly rate approved by the Second Circuit in *Fields*. *See id.* at 854-57; *see also id.* at 856 n.10 (collecting cases with *de facto* hourly rates ranging from $1,289.06 to $2,100). In sum, none of these factors indicate that the award requested by Mr. Olinsky would constitute a "windfall."

**CONCLUSION**

For the reasons set forth above, Plaintiff's motion for attorneys' fees (ECF No. 26) is GRANTED, and Mr. Olinsky is awarded $19,037.50, to be paid out of Plaintiff's past-due benefits in accordance with SSA policy. Upon receipt of this award, Mr. Olinsky is directed to

[5] Whether or not the paralegal time is included in the analysis is immaterial—either way, the attorneys' fee award requested by Mr. Olinsky is reasonable.

promptly refund to Plaintiff $4,543.37, which represents the amount of fees that Mr. Olinsky previously received under the EAJA.

Dated: October 13, 2026
White Plains, New York

**SO ORDERED.**

ANDREW E. KRAUSE
United States Magistrate Judge